UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| KIMBERLY SMITH, | ) | CASE NO. C05-1105-TSZ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | RE: SOCIAL SECURITY |
| JO ANNE B. BARNHART, Commissioner | ) | DISABILITY APPEAL |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Kimberly Smith proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Disability Insurance (DI) and Supplemental Security Income (SSI) benefits after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, it is recommended that this matter be REMANDED for further administrative proceedings.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1964. [1] She has a high school equivalency degree (GED).

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

01 Her past relevant work included employment as an eyewear assembler, a general assembly worker,

02 a cashier, a plastic fabricator, a plant store worker, a bartender, a waitress and a delivery person.

03    Plaintiff filed her first disability benefits application, for SSI only, on September 1, 1986,

04 alleging a kidney impairment with an onset date of November 1982. The claim was denied initially

05 (AR 1981-83) and plaintiff took no further action.

06    Plaintiff then applied for DI benefits on February 28, 1994 and filed a second claim for SSI

07 benefits on October 26, 1994. These claims were denied initially (AR 1985) and on

08 reconsideration (AR 456), and, again, plaintiff took no further action.

09    Plaintiff filed another DI benefits application on March 7, 1996, alleging heart and kidney

10 problems, as well as stress and anxiety, with an onset date of December 28, 1989. (AR 167-70.)

11 The claim was denied initially and upon reconsideration, and plaintiff requested a hearing before

12 an ALJ. After hearing, the ALJ remanded the matter for further development of the evidence

13 relating to mental health and other medical impairments. (AR 127-29.) The claim was again

14 denied. (AR 142-44.)

15    Plaintiff requested a hearing, which was conducted before the same ALJ. In a decision

16 dated June 11, 1999, the ALJ reopened the 1994 DI and SSI claims, considered the testimony and

17 records, and denied the claim, finding plaintiff had severe impairments consisting of provisional

18 somatization and personality disorder, but was able to perform her past relevant work as a cashier

19 and eyewear assembler, as well as other work. (AR 14-40.)

20    Plaintiff appealed the ALJ's decision to the Appeals Council, which denied the request for

21

22 official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01  review.  (AR 5-7.)  She then appealed to this Court. *See Smith v. Barnhart*, No.C00-1226 TSZ.

02  With that appeal pending, plaintiff filed another application for DI and SSI benefits in August

03  2000.  (AR 1995-97.)  While allowing the SSI application, the Commissioner denied  the DI

04  application because plaintiff's disability onset was found to be after her date last insured.   The

05  Commissioner conceded error in the appeal of the 1999 decision based on the ALJ's determination

06  of plaintiff's residual functional capacity (RFC) and in the hypothetical posed to the vocational

07  expert.  (AR 598.)  On May 23, 2001, this Court reversed the 1999 ALJ decision and remanded

08  the case to the Appeals Council (AR 596), which forwarded the case to the ALJ for further

09  proceedings.  Specifically, the Appeals Council directed the ALJ to further develop and clarify

10  plaintiff's 1995 employment (whether it was substantial gainful activity or represented an

11  unsuccessful work attempt), to further develop and evaluate the opinion of one of the treating

12  doctors, to allow plaintiff's attorney the opportunity to cross-examine the medical expert, to

13  complete the evaluation of plaintiff's RFC, and to provide supplemental evidence from a

14  vocational expert on the effect of all of plaintiff's assessed limitations on her ability to work.  (AR

15  602-05.)

16       Pursuant to the remand, the ALJ conducted a hearing on January 29, 2004, taking

17  testimony from plaintiff, two medical experts (Wil Nelp, M.D., and David Clemmons, Ph.D.), and

18  a vocational expert (Susan Stewart Bachelder).  The ALJ re-opened plaintiff's 1994, 1996, and

19  2000 applications (the latter over plaintiff's objection (*see* AR 456)).  On March 25, 2004, the

20  ALJ issued a decision again finding plaintiff not disabled.  (AR 456-77.)  The Appeals Council

21  declined to assume jurisdiction.  (AR 439-42.)  Plaintiff appealed this final decision of the

22  Commissioner to this Court.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -3

01      Plaintiff's date last insured is September 30, 1996.  Therefore, to prevail on her DI claim,

02  she must establish disability on or prior to that date.  SSI benefits are not dependent on this date.

03                                      **JURISDICTION**

04      The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

05                                      **DISCUSSION**

06      The Commissioner follows a five-step sequential evaluation process for determining

07  whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must

08  be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not

09  engaged in substantial gainful activity since her alleged onset date.  At step two, it must be

10  determined whether a claimant suffers from a severe impairment.  The ALJ found that plaintiff had

11  "an impairment or a combination of impairments considered 'severe,'" but did not specify the

12  severe impairments found.  However, the ALJ did find that "claimant's drug abuse is a material

13  factor of her disability *without which* she is not disabled."  (AR 475 (emphasis in original.))  Step

14  three asks whether a claimant's impairments meet or equal a listed impairment.  The ALJ found

15  that plaintiff's impairments did not meet or equal the criteria for any listed impairments.  If a

16  claimant's impairments do not meet or equal a listing, the Commissioner must assess RFC and

17  determine at step four whether the claimant has demonstrated an inability to perform past relevant

18  work.  The ALJ found plaintiff able to perform her past relevant work as a waitress and cashier.

19  If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the

20  Commissioner to demonstrate at step five that the claimant retains the capacity to make an

21  adjustment to work that exists in significant levels in the national economy.  The ALJ also

22  addressed plaintiff's ability to perform other jobs if more restrictive limitations were imposed,

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

01  finding that plaintiff could work as an assembly worker, an office clerk, and a cleaner, thus

02  concluding that claimant was not disabled.   (AR 476-77.)

03      This Court's review of the ALJ's decision is limited to whether the decision is in

04  accordance with the law and the findings supported by substantial evidence in the record as a

05  whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more

06  than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable

07  mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750

08  (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the ALJ's

09  decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

10  2002).

11      Plaintiff argues that the ALJ erred in reopening the favorable determination of her August

12  2000 disability application, contending that the determination was final unless reopened and

13  revised by the Commissioner.  Plaintiff assigns error to the ALJ's failure to find her fibromyalgia,

14  post-traumatic stress disorder (PTSD), and depression to be severe impairments, and improper

15  rejection of the opinions of her treating physicians in so doing.  Plaintiff objects to the manner in

16  which the ALJ found material drug abuse contributing to her disability.  She further asserts that

17  the ALJ failed to address the lay opinion of her mother.  Plaintiff argues that the hypothetical

18  posed to the vocational expert was incomplete, omitting the physical limitations and the limitation

19  on working with the public the ALJ found appropriate.  Finally, plaintiff contends that the ALJ

20  improperly limited her counsel's cross-examination of the medical expert.  For all of these reasons,

21  plaintiff  maintains that the decision should be reversed for an award of benefits.

22      The Commissioner argues that the ALJ correctly reopened the August 2000 claim and

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -5

01 considered the entire period for which disability has been alleged by plaintiff, for the reason that

02 the issue of drug addiction or alcoholism (DAA) was not previously considered.   The

03 Commissioner contends that the finding that plaintiff did not have a severe impairment of

04 fibromyalgia is supported by substantial evidence, that the ALJ, in fact, did accept the testimony

05 that plaintiff had both a depressive disorder and an anxiety disorder (which would include PTSD),

06 and that, at any rate, none of these impairment would have resulted in a  different RFC finding.

07 The Commissioner asserts that the ALJ appropriately reasoned that plaintiff's DAA was material

08 to the finding of disability.  The Commissioner takes the position that the ALJ gave appropriate

09 weight to the medical evidence, lay evidence, and plaintiff's testimony in determining her RFC.

10 The Commissioner argues that the hypothetical posed to the vocational expert was based on

11 substantial evidence in the record and was properly relied on by the ALJ, and contends that the

12 ALJ appropriately handled the testimony of the medical expert.  The Commissioner maintains that

13 the decision is supported by substantial evidence and free of legal error, and should be affirmed.

14 <u>Reopening of 1986 Application</u>

15    In plaintiff's opening brief, apparently for the first time, she suggests that, if found disabled,

16 benefits should be awarded "based on the September 1, 1986 concurrent application." Plaintiff

17 bases this request on the allegedly deficient 1986 notice denying her claim, citing  *Gonzalez v.*

18 *Sullivan*, 914 F.2d 1197 (9th Cir. 1990), in support.  The Commissioner argues that the facts of

19 this case do not establish the due process violation that allowed the plaintiff in *Gonzalez* to reopen

20 a previous claim, and that this Court lacks jurisdiction to address the issue in the absence of a

21 request to reopen directed to the administrative agency.

22    The Commissioner's contention is well taken. Plaintiff acknowledges that, only if she

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -6

01 makes a "colorable constitutional claim that the decision not to reopen violates the due process

02 clause" does this Court have jurisdiction to consider the agency's decision. *Id.* at 1203. Yet, here,

03 there is no such decision to address because plaintiff has not asked the agency to reopen the prior

04 claim. Furthermore, although plaintiff correctly points out that the 1986 notice denying her claim

05 did not specifically inform her of the consequences of failing to request a hearing (AR 1982-83),

06 that notice is not "like that received by Mr. Gonzalez." *See Acquiescence Ruling* 92-7(9). The

07 notice also differed from that in the *Gonzalez* case in that it did not create an inference that

08 reapplication could be an alternative to appeal. At any rate, in the absence of a request made to

09 the agency to reopen the application, this Court does not have jurisdiction to order an award of

10 benefits based on the 1986 application.

11 <u>Reopening of August 2000 SSI Application</u>

12       While this Court lacks jurisdiction to consider plaintiff's 1986 application because of the

13 absence of any agency action to review, the contrary is true with regard to the 2000 application.

14 The ALJ chose to reopen plaintiff's August 2000 application to address two issues not previously

15 considered: whether drug or alcohol abuse was a material factor in plaintiff's impairment and

16 noncompliance with medical treatment. (AR 457.)

17       Plaintiff argues that the August 2000 application was administratively final and the ALJ

18 did not have jurisdiction to reopen it. The Commissioner takes the position that neither the

19 Appeals Council, nor the remand order from this Court precluded the ALJ from reviewing the

20 period covered by plaintiff's 2000 claim, and that appealing claimants are specifically told that the

21 regulations allow any issues relating to a claim to be considered by an ALJ upon remand, "whether

22 or not they were raised in the administrative proceedings leading to the final decision in your

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -7

01  case." 20 C.F.R. §§ 404.983, 416.1483 ("Any issues relating to your claim may be considered by

02  the administrative law judge whether or not they were raised in the administrative proceedings

03  leading to the final decision in your case.") (emphasis added.)  The Commissioner also cites 20

04  C.F.R. §§ 404.977(b), 416.1477(b), authorizing the ALJ to take "any additional action that is not

05  inconsistent with the Appeals Council's remand order."

06        Plaintiff's 2000 claim had obviously not yet been filed at the time of the April 22, 1999

07  hearing, which resulted in the decision subject to appeal in this Court and the remand order.  The

08  1999 hearing, pursuant to plaintiff's request for a hearing (AR 145), was based on the

09  administrative denial of her 1994 and 1996 claims. ( *See* AR 57-74 and 142-44.)  Accordingly,

10  because the claim remanded to the ALJ by this Court was not plaintiff's August 2000 claim, the

11  regulations cited by the Commissioner are unavailing.

12        The Commissioner also argues that consideration of the 2000 claim was appropriate as a

13  reopening of the application based on 20 C.F.R. §§ 404.987, *et seq.*, 416.1489, *et seq.*  These

14  regulations authorize the reopening of an otherwise final determination of disability within twelve

15  months of the date of the notice of the initial determination for any reason, and within two years

16  (for SSI benefits) or four years (for DI benefits) of the date of the notice of the initial

17  determination upon a finding of "good cause." *Id.* at §§ 404.988, 416.1488.  Good cause includes

18  "new and material evidence being furnished, a clerical error, or a clear showing on the face of the

19  evidence that an error was made in making the determination." *Id.* at §§ 404.989, 416.1489.  The

20  Commissioner argues that the ALJ was justified in reopening the 2000 application because of the

21  "new evidence" provision.  While the timeliness of the reopening is not at issue, plaintiff asserts

22  that the "good cause" standard was not met.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -8

01        Upon remand by this Court, the ALJ notified plaintiff that a de novo review would be

02   conducted of the entire record, including the period covered by the August 2000 application. (AR

03   611.)   The ALJ gave no reason for reopening this later claim.   The Notice of Hearing referenced

04   only the 1994 and 1996 claims. (AR 616.)

05        The decision to reopen a prior claim can only be affirmed on the basis of the ALJ's stated

06   reasons. *Wyatt v. Barnhart*, 349 F.3d 983, 984 (7th Cir. 2003). *Accord Cole v. Barnhart*, 288

07   F.3d 149, 151 (5th Cir. 2002).   Here, the ALJ set forth the reason for reopening the prior claim

08   in her March 25, 2004 decision:

09        The claimant submitted another claim for Supplemental Security payments on August
        17, 2000.  She was paid by Disability Determination Services or "DDS" on a later
10        application beginning in 1990 and is currently in pay status.  However, this later
        favorable finding (based on depression and post traumatic stress disorder) did not
11        evaluate the issue of significant drug and alcohol abuse and non-compliance. . . . A
        de novo review is required to fully evaluate the claimant, which includes observation,
12        credibility evaluation, and examination by both myself and medical experts as well as
        to evaluate the significant issues of substance abuse and non-compliance.

13

14   (AR 457.)   The ALJ went on to state:

15        I reverse the DDS determination of disability, based on the application of August 20,
        2000, as it did not review and evaluate the issues of drug and alcohol abuse and non-
16        compliance.

17   (AR 475.)   At the hearing, there was some colloquy as to the basis for the de novo review.  The

18   ALJ did not give a reason for the reopening other than stating:  "So I think I have the authority

19   and that's why I'm doing it."  (AR 486.)  Although quizzing plaintiff to be sure she understood

20   "what's at stake here," the ALJ gave no reason for the de novo review.  She at no time mentioned

21   the existence of new evidence as the reason for re-opening the 2000 application.  Indeed, as

22   plaintiff suggests, the ALJ apparently conducted the de novo review for the sole reason that the

01  case had been remanded, warning plaintiff that her disability award could be set aside if she

02  continued "to go forward." (AR 492.)

03      The grounds for reopening must be narrowly applied when the Commissioner proceeds

04  against a claimant. "Because errors can cause considerable hardship, the regulations should be

05  liberally applied in favor of beneficiaries." *Dugan v. Sullivan*, 957 F.2d 1384, 1389 (7th Cir. 1992)

06  (recognizing the "special need for finality" in disability determinations).   In this case, the

07  Commissioner argues that reopening was warranted in light of the materiality of new evidence

08  before the ALJ, pointing to new medical exhibits, plaintiff's testimony, and the testimony of two

09  medical experts.  While conceding that much of the evidence was "new" in the sense that it did not

10  exist when the 2000 claim was approved, plaintiff asserts that this evidence was not the basis for

11  the ALJ's decision to reopen the claim because the ALJ had not yet seen the evidence.

12      The undersigned agrees with plaintiff's position.  The ALJ's stated reasons fail to satisfy

13  the regulations.  Accordingly, the reopening and denial of plaintiff's August 2000 SSI claim for

14  benefits should be reversed and remanded with instructions to reinstate the initial favorable

15  determination granting benefits.

16                          <u>1994 and 1996 DI Applications</u>

17      The ALJ's decision also addressed the remand from this Court of plaintiff's 1994 and 1996

18  applications for DI benefits as of her date last insured on September 30, 1996.  The undersigned

19  addresses claims pertinent to those applications below.

20  A.   <u>Evaluation of Severe Impairments, including Chronic Pain and Mental Disorders</u>

21      Step two of the sequential disability analysis requires the ALJ to make a determination as

22  to whether a claimant suffers from an impairment or combination of impairments that are "severe."

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -10

01 In this case, the ALJ found as follows:

02 . . . The claimant has an impairment or a combination of impairments considered "severe"based on the requirements in 20 CFR §§ 404.1520(c) and 416.920(b).  The

03 claimant's drug abuse is a material factor of her disability *without which* she is not disabled.

04 . . . These medically determinable impairments do not meet or medically equal one of

05 the listed impairments in appendix 1, Subpart P, Regulation No. 4.

06 (AR 475-76 (emphasis in original.))

07         The ALJ's findings do not specify what impairments were found to be severe.  Although

08 the ALJ listed the existence of a number of impairments ("a kidney disorder, a heart condition, an

09 ovarian cyst, connective tissue disease, cervix cancer, chronic pain and mental problems[]"), and

10 stated that none of them were "severe"(AR 459, 466), she contradicted the statement as to a heart

11 condition in concluding that the "cardiovascular issues" were severe "as the evidence supports

12 significant functional limitation." (AR 467.) Further, although the ALJ found the kidney disorder,

13 ovarian cyst, cervix cancer, and connective tissue disease not severe (AR 467-68), she did not

14 specifically state whether the chronic pain and "mental problems" were severe.     On remand,

15 the ALJ should make sufficiently specific findings as to which impairments are found to be severe

16 and which are not.  Additionally, rather than referring generally to "mental problems," the ALJ

17 should  address specific mental conditions diagnosed, such as depressive disorder and anxiety

18 disorders.[2]

19 */ / /*

20

21         [2] The Commissioner's contention that the ALJ "noted and accepted" the testimony of Dr.

22 Clemmons that plaintiff had both a depressive disorder and an anxiety disorder is not correct. (*See* Dkt. 10 page 10.)  No such finding appears in the ALJ's decision.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -11

B.      Consideration of Drug Addiction and Alcoholism (DAA)

        Contrary to the specific requirements of the regulations, the ALJ found plaintiff to have "drug abuse" which was a material factor in her disability before actually finding her to be disabled. *See* 20 C.F.R. §§ 404.1535(a), 416.935(a) ("If we find that you are disabled  and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.")  (emphasis added).  The Commissioner apparently recognizes this inadequacy by attempting to assert that the ALJ accepted the opinion of the consulting doctor that plaintiff met the requirements for mental Listing 12.04. (*See* Dkt. 10 at 11.)  Yet, that assertion is flatly contradicted by the record – the ALJ at no time made a finding that plaintiff met any of the mental impairment listings and, in fact, noted with apparent approval Dr. Clemmon's testimony that the medical records do <u>not</u> support a meeting or equaling of any mental impairment listing. (AR 470.)  The ALJ stated unequivocally that none of plaintiff's impairments, including her "mental problems," were sufficiently severe to meet or medically equal, either singly or in combination, one of the listing of impairments in Appendix 1, Subpart P, Regulations No. 4. (AR 466.)

        A failure to determine whether a claimant is disabled using the five-step sequential analysis without separating out the impact of drug addiction and alcoholism preludes a finding that such drug addiction or alcoholism is a contributing factor in the claimant's disability.  *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).  Accordingly, the finding that drug abuse was a material factor in plaintiff's disability should be reversed and remanded with instructions that the ALJ complete the full five-step sequential analysis of disability before addressing the materiality

01  of any drug addiction or alcoholism.[3]

02     It also appears that the opinion of the treating doctor, Dr. Gustafson, is incomplete with

03  regard to the issue of substance addiction.  The ALJ criticized the inadequacy of these records in

04  her decision. (AR 470.)  However, the ALJ has an affirmative duty to assist the claimant in

05  developing the record at every step of the inquiry.  *Bustamante*, 262 F.3d at 954. On remand, the

06  ALJ should clarify the opinion of Dr. Gustafson regarding any possible addiction disorder. The

07  ALJ should also consider and give proper weight to the opinions of plaintiff's other treating

08  doctors on the issue of a possible addiction disorder, including Drs. Holman and Taylor.  If the

09  record is not adequate to ascertain the opinions of the treating doctors, the ALJ should supplement

10  the record by asking the doctors to clarify their opinions.[4]  In considering the absence or presence

11  of "drug seeking behavior," the ALJ should consider Social Security Ruling (SSR) 96-7p, which

12  states that persistent attempts by the individual to obtain relief of pain or other symptoms generally

13  lend support to an individual's allegations of intense and persistent symptoms.

14  / / /

15

16  [3] It is concerning that the ALJ repeatedly refers to "drug and alcohol abuse" (*see* AR 457,
17  469, 470, 475), rather than evaluating the medical evidence of drug <u>addiction</u> or <u>alcoholism</u> as
    specified in the regulation.  *See* 20 C.F.R. §§ 404.1535, 416.935.  On remand, the ALJ should
18  perform a proper evaluation of the absence or presence of these conditions as specified in the
    regulations and the materiality of those conditions, if present, to the determination of plaintiff's
19  disability.

20  [4] *See* Social Security Ruling (SSR) 99-2p ("If the adjudicator finds the evidence is
    inadequate to determine whether the individual is disabled, he or she must first recontact the
21  individual's treating or other medical source(s) to determine whether the additional information
    needed is readily available, in accordance with 20 CFR 404.1512 and 416.912."); 20 C.F.R. §
22  416.912(e) ("We will seek additional evidence or clarification from your medical source when the
    report from your medical source contains a conflict or ambiguity that must be resolved. . . .")

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -13

01  C.      Evaluation of fibromyalgia

02      Plaintiff asserts error at step two in the ALJ's failure to find her fibromyalgia severe.  At

03  step two, plaintiff must make a threshold showing that her medically determinable impairments

04  significantly limit her ability to perform basic work activities.  *See Bowen v. Yuckert*, 482 U.S. 137,

05  145 (1987) and 20 C.F.R. § 416.920(c).  "Basic work activities" refers to  "the abilities and

06  aptitudes necessary to do most jobs."  20 C.F.R. § 416.921(b).  "An impairment or combination

07  of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that

08  has 'no more than a minimal effect on an individual's ability to work.'"  *Smolen v. Chater*, 80 F.3d

09  1273, 1290 (9th Cir. 1996) (quoting SSR 85-28).  "[T]he step two inquiry is a de minimis

10  screening device to dispose of groundless claims."  *Id.* (citing *Bowen*, 482 U.S. at 153-54).  An

11  ALJ is also required to consider the "combined effect" of an individual's impairments in

12  considering severity.  *Id.*

13      Plaintiff argues that, in failing to find this impairment severe, the ALJ improperly rejected

14  the opinions of her treating doctors.  In general, more weight should be given to the opinion of

15  a treating physician than to a non-treating physician, and more weight to the opinion of an

16  examining physician than to a non-examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th

17  Cir. 1996).  *See also Smolen*, 80 F.3d at 1285 (the opinions of specialists related to their areas of

18  specialization are given more weight than the opinions of non-specialists).  Where not contradicted

19  by another physician, a treating or examining physician's opinion may be rejected only for "'clear

20  and convincing'" reasons.  *Lester*, 81 F.3d at 830 (quoting *Baxter v. Sullivan* , 923 F.2d 1391,

21  1396 (9th Cir. 1991)).  Where contradicted, a treating or examining physician's opinion may not

22  be rejected without "'specific and legitimate reasons' supported by substantial evidence in the

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -14

01    record for so doing." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.

02    1983)).    Where the opinion of the treating physician is contradicted, and the non-treating

03    physician's opinion is based on independent clinical findings that differ from those of the treating

04    physician, the opinion of the non-treating physician may itself constitute substantial evidence. *See*

05    *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  It is the sole province of the ALJ to

06    resolve this conflict. *Id.*

07         "Where the Commissioner fails to provide adequate reasons for rejecting the opinion of

08    a treating or examining physician, [the Court credits] that opinion as 'a matter of law.'" *Lester*,

09    81 F.3d at 830-34 (finding that, if doctors' opinions and plaintiff's testimony were credited as true,

10    plaintiff's condition met a listing) (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir.

11    1989)).  Crediting an opinion as a matter of law is appropriate when, taking that opinion as true,

12    the evidence supports a finding of disability. *See, e.g.*, *Schneider v. Commissioner of Social Sec.*

13    *Admin.,* 223 F.3d 968, 976 (9th Cir. 2000) ("When the lay evidence that the ALJ rejected is given

14    the effect required by the federal regulations, it becomes clear that the severity of [plaintiff's]

15    functional limitations is sufficient to meet or equal [a listing.]"); *Smolen*, 80 F.3d at 1292 (ALJ's

16    reasoning for rejecting subjective symptom testimony, physicians' opinions, and lay testimony

17    legally insufficient; finding record fully developed and disability finding clearly required).

18         However, courts retain flexibility in applying this "'crediting as true' theory." *Connett v.*

19    *Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there

20    were insufficient findings as to whether plaintiff's testimony should be credited as true).  As stated

21    by one district court: "In some cases, automatic reversal would bestow a benefits windfall upon

22    an undeserving, able claimant." *Barbato v. Commissioner of SSA*, 923 F. Supp. 1273, 1278 (C.D.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -15

01 Cal. 1996) (remanding for further proceedings where the ALJ made a good faith error, in that

02 some of his stated reasons for rejecting a physician's opinion were legally insufficient).

03     The Ninth Circuit Court of Appeals described fibromyalgia as follows:

04 "[(F)ibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest
importance to disability law, its symptoms are entirely subjective. There are no

05 laboratory tests for the presence or severity of fibromyalgia. The principal symptoms
are 'pain all over,' fatigue, disturbed sleep, stiffness, and 'the only symptom that

06 discriminates between it and other diseases of a rheumatic character' multiple tender
spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the

07 patient must have at least 11 of them to be diagnosed as having fibromyalgia) that
when pressed firmly cause the patient to flinch."

08

09 *Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001) (quoting *Sarchet v. Chater*, 78 F.3d 305,

10 306 (7th Cir. 1996)). SSR 99-2p likewise points to the significance of tender points to a

11 fibromyalgia diagnosis.  SSR 99-2p at n.3 ("Individuals with impairments that fulfill the American

12 College of Rheumatology criteria for [fibromyalgia] (which includes a minimum number of tender

13 points) may also fulfill the criteria for [chronic fatigue syndrome].")

14     Plaintiff argues that, in concluding that her fibromyalgia is not severe, the ALJ

15 mischaracterized and improperly rejected the medical opinions of Dr. Holman, her treating

16 rheumatologist, in favor of the opinion of the consulting medical expert, Dr. Nelp.  In support of

17 her argument, plaintiff notes the consistent diagnosis of fibromyalgia by Dr. Holman, as well as

18 the presence of trigger points.  (AR 1689-90.)  Dr. Nelp, on the other hand, testified that he did

19 not have an opinion as to the fibromyalgia diagnosis and, in fact, apparently questioned the very

20 existence of such a condition.  (AR 545.)  [5]  With no discussion of Dr. Holman's opinion or

21 _____

22     [5] The ALJ frustrated the attempt by counsel for plaintiff to explore Dr. Nelps' opinion that
fibromyalgia is a "controversial diagnosis as far as some people use it and some people don't."

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -16

01  explanation for rejecting his diagnosis, the ALJ adopted Dr. Nelp's opinion that plaintiff had no

02  objective evidence of fibromyalgia, consisting of trigger points, swelling, or sensory changes, and,

03  thus, that this condition was not severe.

04        The ALJ's step two determination as it relates to fibromyalgia is not supported by

05  substantial evidence.  Contrary to the conclusion reached by the ALJ, the record contains evidence

06  supporting the existence of an impairment meeting the diagnostic criteria of fibromyalgia.  Yet,

07  even taking the opinions of plaintiff's treating rheumatologists as true, the record does not support

08  a finding of disability as a result of plaintiff's fibromyalgia.  Accordingly, on remand, the ALJ

09  should reassess plaintiff's fibromyalgia at step two and its effect on her RFC.

10  D.    Lay Witness Statement

11        The Ninth Circuit has held that "[l]ay testimony as to a claimant's symptoms is competent

12  evidence that an ALJ must take into account, unless he or she expressly determines to disregard

13  such testimony and gives reasons germane to each witness for doing so."  *Lewis v. Apfel*, 236 F.3d

14  503, 511 (9th Cir. 2001).  Here, the ALJ failed to discuss the statement submitted by plaintiff's

15  mother, Beverly Esperum.  (*See* AR 777-88.)  As such, on remand, the ALJ should appropriately

16  address the statement of plaintiff's mother.

17  E.    Cross-Examination of Consulting Expert

18        Dr. Clemmons, one of the medical consulting experts, testified by phone.  After answering

19  questions posed by the ALJ, plaintiff's attorney questioned Dr. Clemmons.  As demonstrated

20

---

21  (AR 545.)  The clear inference, however, is that Dr. Nelp did not accept the condition as a

22  legitimate diagnosis.  Such an opinion is not accepted by either the Social Security Administration
    or this Circuit.  *See* SSR 99-2p at n.3 and *Rollins*, 261 F.3d at 855.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -17

01 below, from the beginning, the ALJ pressed the attorney:

02 ALJ:          Okay. Counsel, prepare your questions because we're going
                 to go quickly on this. Okay? So be prepared. Why don't we
03               go off the record for five minutes.

04 (At this point, the Administrative Law Judge went off the record.)

05 (On the record.)

06 ALJ:          Back on the record. Okay, we're back. All right. Go ahead,
                 Counsel, ask your questions.

07 ATTY:         Thank you. Your Honor. Just a second, Dr. Clemmons.

08 ME2:          Sure.

09 ALJ:          Well we don't have too much time here, Counsel. Are you
10               ready or not?

11 ATTY:         Dr. Clemmons, would you agree that the central element of a
                 somatoform disorder is that the person believes she has the
12               impairment?

13 (AR 571.)  After a few questions, the ALJ interrupted:

14 ALJ:          Well, what's your question of the doctor, Counsel? We can
                 read it. What's your question?

15

16 (AR 574.)  The ALJ took over the questioning at one point:

17 ALJ:          Well why don't we ask specific to this case. Well Doctor,
                 let's look at it specific to this case. Mr. Fields, that's why we
18               are here. Do you think there's malingering?

19 (AR 576.)  Finally, the ALJ took to repeatedly interrupting the attorney.

20 ATTY:         Well, do you recall reviewing Dr. Haney's report?

21 ALJ:          Well, what's your question about it, Counsel, it says that.

22 ME2:          I have 152 records here.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -18

01       ATTY:         Did you make any notes regarding Dr. Haney's report?

02       ALJ:            Counsel, what is your question about the report? It says what
is says. Now what's your question to him?

03

      ATTY:         I want to ask if he disagrees with the diagnosis of the pain
04                                disorder and whether he agrees that it's well documented in
the record as Dr. Haney indicates.

05

      ALJ:            Do you agree with the diagnosis of a pain disorder, Doctor?

06

      ME2:          Well, yeah, I don't disagree with that.

07

08 (AR 577.) A few questions later, the ALJ terminated the questioning:

09       ALJ:            Ask your question, Mr. Fields. This is your last question.
I've got to hear from the vocational expert. We've got to
10                                wrap this up.

11 (AR 578.) Finally, after stating, "You're finished, Counsel[,]" the ALJ terminated the phone call.

12 (AR 579-80.)

13       After the hearing, plaintiff's counsel wrote to the ALJ to object to not being permitted to

14 fully cross-examine Dr. Clemmons. (AR 646-47.) Absent that opportunity, counsel asked that the

15 testimony be stricken from the record or given no weight. In response, the ALJ stated that the

16 questioning was irrelevant and scattered, and the hearing had already gone on too long. (AR 648-

17 49.)

18       The failure to allow adequate cross-examination was one of the grounds cited by the

19 Appeals Council in the previous remand of this case for a second ALJ hearing. (AR 603.) As the

20 Appeals Council pointed out, the ALJ relied extensively on the expert's opinion in denying

21 disability, yet denied counsel the opportunity for adequate cross examination. Unfortunately, the

22 ALJ repeated this error at the second hearing.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -19

01          As the ALJ noted (AR 648), the medical exhibits in this case are extensive.    The

02    administrative record consists of more than two thousand pages, most of which are medical

03    records.  Plaintiff's counsel heard the opinion of Dr. Clemmons for the first time when he testified

04    by speaker phone at the hearing.[6]  The areas of inquiry being pursued by counsel were relevant to

05    the relationship between plaintiff's reports of pain and the diagnosis of pain disorder.  Ultimately,

06    the analysis of plaintiff's credibility was a central component of the ALJ's findings.

07          Plaintiff was denied due process by being deprived of the opportunity for meaningful cross-

08    examination of the consulting medical expert.  If the scheduled hearing time was inadequate,

09    additional time should have been scheduled for a later date.  The testimony of Dr. Clemmons

10    should be stricken and the evidence re-weighed without his testimony.  If the opinion of another

11    consulting expert is obtained, plaintiff's attorney must be allowed the opportunity for reasonable

12    cross-examination.

13    F.    Assessment of RFC

14          Plaintiff argues that the ALJ did not follow the directions of the Appeals Council to specify

15    how long she can sit, stand or walk in an eight-hour day.  However, in her decision, the ALJ's

16    description of plaintiff's exertional functional capacity met those instructions:

17          The claimant has the exertional residual functional capacity for a full range of light
          work.  Specifically, she can occasionally lift and/or carry 20 pounds, frequently lift
18          and/or carry 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, and sit
          about 6 hours in an 8-hour workday.

19

20    (AR 476.)

21          [6] Plaintiff's argument that the expert should have been required to testify live rather than
      by speaker phone is unavailing.  Plaintiff makes no showing she was prejudiced by having the
22    testimony presented in this manner.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -20

01    Yet, the hypothetical posed to the vocational expert at the hearing simply asked the expert

02    to assume a limitation to the "full range of light activity." (AR 582.)  A hypothetical posed to a

03    vocational expert must include all of the claimant's functional limitations supported by the record.

04    *Thomas*, 278 F.3d at 956 (citing *Flores v. Shalala*, 49 F.3d 562, 520-71 (9th Cir. 1995)).  A

05    vocational expert's testimony based on an incomplete hypothetical lacks evidentiary value to

06    support a finding that a claimant can perform jobs in the national economy. *Matthews v. Shalala*,

07    10 F.3d 678, 681 (9th Cir. 1993) (citing *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)).

08    Without a showing that the vocational expert's definition of "light activity" coincided with the

09    definition assumed by the ALJ, the findings at step four and five of the sequential analysis lack

10    substantial evidence.

11    The ALJ also included non-exertional limitations in the hypothetical consisting of

12    occasional contact with the public up to thirty percent of the time and routine repetitive tasks.

13    (AR 582.)  The expert testified that, while plaintiff's past work would be eliminated, she would

14    be able to perform other work existing in significant numbers in the national economy.  (AR 582-

15    85.)  The ALJ posed a second hypothetical assuming unlimited public contact and involving

16    simple, routine tasks.  The vocational expert testified that plaintiff would be able to perform her

17    past work as a waitress and many cashier jobs with these limitations. (AR 585-86.)

18    The errors identified above with respect to the consideration of plaintiff's fibromyalgia, the

19    existence of mental disorders such as depression and anxiety disorder, and the assessment of the

20    opinions of plaintiff's treating physicians also implicate the ALJ's assessment of these physicians'

21    opinions with respect to plaintiff's RFC.  The ALJ should re-evaluate plaintiff's RFC for purposes

22    of steps four and five of the sequential analysis, obtaining additional vocational testimony if

01 necessary.

02 G.    Plaintiff's Credibility

03        Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

04 reject a claimant's testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). *See*

05 *also Thomas*, 278 F.3d at 958-59.  In finding a social security claimant's testimony unreliable, an

06 ALJ must render a credibility determination with sufficiently specific findings, supported by

07 substantial evidence.  "General findings are insufficient; rather, the ALJ must identify what

08 testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81

09 F.3d at 834.  "We require the ALJ to build an accurate and logical bridge from the evidence to her

10 conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings."

11 *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In weighing a claimant's credibility, the

12 ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between

13 his testimony and his conduct, his daily activities, his work record, and testimony from physicians

14 and third parties concerning the nature, severity, and effect of the symptoms of which he

15 complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

16        To the extent the above-described errors implicate the ALJ's credibility assessment, the

17 ALJ should reassess plaintiff's credibility on remand.

18 H.    Nature of Remand

19        The Court has discretion to remand for further proceedings or to award benefits.    *See*

20 *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  The Court may direct an award of benefits

21 where "the record has been fully developed and further administrative proceedings would serve

22 no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -22

01  Such a circumstance arises when: (1) the ALJ has failed to provide legally sufficient
02  reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear
03  from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

04  *Id.* at 1076-77.

05  In this case, the record as it stands does not compel a finding of disability. While plaintiff's

06  credibility may need to be re-assessed based on the errors identified herein, the Commissioner cites

07  a number of factors present in the record that, if resolved against plaintiff, may legitimately impact

08  her credibility, including a criminal conviction for a charge of false swearing in obtaining public

09  assistance benefits, alleged untruthfulness about drug use, her current part-time employment as

10  a waitress, her work record in general, and the allegation that she failed to follow medical advice.[7]

11  Therefore, the proper remedy is a remand for further proceedings, rather than for an award of

12  benefits. The undersigned further recommends that, on remand, the matter should be assigned to

13  a different ALJ.

14  **<u>CONCLUSION</u>**

15  For the reasons described above, this matter should be REMANDED for further

16  administrative proceedings. Specifically, the reopening and denial of plaintiff's August 2000 SSI

17  claim for benefits should be reversed and remanded with instructions to reinstate the initial

18  _____

19  [7] The Commissioner correctly notes that a lack of justification for following treatment as
prescribed may affect the credibility of a claimant, even if the failure to follow treatment does not

20  rise to the level of justifying a complete denial of benefits. 20 C.F.R. §§ 404.1530, 416.920. "However, the adjudicator must not draw any inferences about an individual's symptoms and their

21  functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case

22  record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p at 7.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -23

01  favorable determination granting benefits.  Plaintiff's 1994 and 1996 DI claims should be

02  remanded to specify which impairments are found to be severe, including specific mental

03  diagnoses. A complete five-step sequential analysis of plaintiff's disability should be conducted

04  before addressing the materiality of any drug addiction or alcoholism.  If the DAA issue is reached,

05  the opinions of the treating doctors must be considered, as well as SSR 96-7p.  The finding that

06  plaintiff's fibromyalgia is not a severe impairment is not supported by substantial evidence and

07  should be reversed. The ALJ should discuss the effect of plaintiff's fibromyalgia and other severe

08  impairments on her RFC.  The ALJ should appropriately address the lay witness statement. The

09  testimony of Dr. Clemmons should be stricken and, if the opinion of another medical consulting

10  expert is obtained, plaintiff's counsel should be afforded the opportunity for reasonable cross

11  examination.  The step four and step five analysis should be re-assessed based on the errors in the

12  hypothetical posed to the vocational expert, and to the extent that the re-consideration of

13  plaintiff's severe impairments implicate her RFC.  If necessary, additional vocational testimony

14  should be obtained.  To the extent the above-described errors implicate the ALJ's credibility

15  assessment, the ALJ should reassess plaintiff's credibility on remand.  Finally, on remand, it is

16  recommended that the matter be assigned to a different ALJ.

17        A proposed order accompanies this Report and Recommendation.

18        DATED this  10th  day of  February , 2006.

19

20        Mary Alice Theiler
          United States Magistrate Judge

21

22

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -24